CASE 78—PETITION ORDINARY—MAY 2.

# Louisville & Nashville Railroad Co. v. Lawson.

APPEAL FROM WARREN CIRCUIT COURT.

I. CARRIERS REFUSING TO DELIVER GOODS MAY BE SUED FOR CONVERSION.— Where there is an unqualified refusal by the holder of goods to deliver them to the owner, he being entitled to the possession, and the holder having no legal reason for their detention, the owner may proceed for a conversion and recover the value of the goods. Honesty of purpose on the part of the holder is no protection to him.

Appellee demanded of appellant, at its depot, a box of goods, of the arrival of which appellant's agent had notified him. He was informed

they were not there, and received the same information in answer to subsequent demands. After several months the goods were found in appellant's depot, where they were at the time of appellee's first demand, and had been ever since. Appellant then offered to deliver them, but appellee refused to receive them, and brought this action in the nature of trover to recover their value in damages. *Held*—That plaintiff had the right to treat the defendant's refusal to deliver as a conversion, and to recover the value of the goods.

2. DEFECT IN PETITION CURED BY ANSWER.—If the petition failed, as appellant claims, to aver a conversion of the goods, it was cured by the answer, which denied that defendant had converted them.

3. CONTRADICTION OF WITNESS.—It was competent for plaintiff to prove a conversation which he had with defendant's delivery clerk after the goods were found, in which the clerk admitted that he failed to deliver the goods when they were demanded, and expressed his belief that he would lose his position as the result of it. The testimony was competent, not as an admission against defendant, but by way of contradicting the clerk, who had testified that he did, in fact, deliver the goods when demanded.

.JAS. A. MITCHELL, H. W. BRUCE and WILLIAM LINDSAY for APPELLANT.

Argued by Jas. A. Mitchell for appellant.   Brief not in record.

JOHN M. WILKINS and THOMAS H. HINES for appellee.

Argued by John M. Wilkins for appellee.   Brief not in record.

.JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

September 11, 1884, appellant's agent at Bowling Green, Kentucky, notified the appellee that a box of goods had arrived there for him over its road, and that he must pay the freight and receive them. The next day he gave the money to pay the charges and an order for them to a drayman, who thereupon, as is customary, paid the freight to the freight agent, taking from him what is known as an "expense receipt," which, when presented to the delivery clerk, authorized him to deliver the goods to the drayman. This the latter did, and demanded the goods. He was informed they were not there. During

the following week or ten days he made several such demands, and received the like answer upon each occasion. In point of fact they were there. The appellee was a merchant. The goods had been made to order for him, were of a particular character, and intended for the then fall trade. Thus the matter stood until December, 1884, when an agent of the consignor of the goods found them in the freight depot. The appellant then offered to deliver them to the appellee. He refused to receive them, and brought this action, in the nature of *trover*, to recover their value in damages. They were worth in Bowling Green $240 or more, on September 12, 1884. A trial resulted in a verdict for that sum.

The defense was that the goods were in fact delivered to the drayman, when first demanded, and taken in charge by him, but that he failed to remove them from the depot. This was the issue. The jury as to it found against the railroad company.

They were, in substance, instructed to find for the appellee their full value, if they were not so delivered. This, the appellant contends, was error.

The court refused, upon its motion, to tell the jury that a failure to deliver through negligence did not authorize a recovery of the value of the goods, and the principal question presented is the proper criterion of recovery, the appellant contending that, as it did not appear the goods had been molested or that they had depreciated in value, the appellee could not treat it as a conversion and recover their value, but must accept them and sue for any damages sustained by the non-delivery.

It is suggested in argument that the petition is defect-

ive, because it contains no positive averment of a conversion of the goods. It, however, avers that the appellant "failed and refused to deliver said goods." Also, "and "by the defendant's failure and refusal to deliver them as "aforesaid, and by the unlawful conversion of said goods "by the defendant and depriving plaintiff of them, he "has been damaged in said sum."

No objection was made to the petition, and, even if it be technically defective in the respect urged, yet it was cured by the answer, because it says: "It denies that it "has converted said goods, or has failed or refused to "deliver the same."

A demand and refusal do not constitute, *per se*, a conversion, but merely *prima facie* evidence of it. If an actual conversion be not shown, then a rightful demand for and a wrongful refusal to surrender the property lay the foundation for a recovery. They are evidence of a prior conversion. It may then be presumed. This presumption, arising from a demand and refusal to surrender the property, may be rebutted, as if, for instance, it appear that the holder of the property had good reason to doubt the identity of the claimant as the owner, or had a lien upon it entitling him to hold it even against the owner until satisfaction. If, however, there be an unqualified refusal to surrender them to the owner, he being entitled to the possession, and the holder have no legal reason for their detention, then the owner may proceed for a conversion. Honesty of purpose upon the part of the holder is no protection to him. His motives can not enter into the question. The only inquiry is, has the property been wrongfully detained from the

owner? It is true conversion is the *gist* of the action, but if there be a wrongful refusal to deliver it to the owner upon demand, then the holder is to be regarded as having converted it.

In this instance there was no refusal, in express words, to deliver the goods. There was a demand for them, and the owner was told that they were not there.

The case is unlike Scovill v. Griffith, 12 N. Y., 509, where there was merely an unreasonable delay or omission by a carrier to deliver goods. The owner did not demand them, as in this case.

The appellant was bound to know that the goods had come to hand. It had said so by its notice to the owner that he must remove them. Upon demand by him of them he is informed they are not there, although this is not true, and the carrier was required by law to know that they were there. This should be regarded as a tortious detention, or, what is the same thing, a wrongful withholding from the owner.

We do not mean to decide that a mere delay, by a carrier, in delivering goods amounts to a conversion. He is not bound to deliver until a demand is made. But, when made, he must know whether the property is at hand; and if it be, and he wrongfully fails to deliver it, he can not escape the charge of conversion because he did not, in express words, refuse to deliver it, but informs the consignee it has not come to hand, when he is bound by law to know otherwise. Such conduct on his part should be regarded as a *misfeasance*, and not as a mere nonfeasance. It is certainly a wrongful detention from the owner, and Justice Story said, in Watt v. Potter, 2 Mason, 77: "Whoever undertakes tortiously to deal with

the property of another as his own, *or tortiously detains it from the owner*, is, in contemplation of law, guilty of a conversion of it."

Mr. Wait, in the 6th volume of his work, " Actions and Defenses," says : " Mere delay in the delivery of goods, *unless there has been a demand*, does not amount to a conversion."

In this case there was an unjustifiable failure to deliver the goods upon demand, and the lower court did not err in adopting their value as the measure of the damages.

Appellant also complains because the appellee, over its objection, was permitted to prove a conversation between the latter and the delivery clerk of the appellant, which occurred in the appellee's store upon the night after the goods were found in the depot, in December. It was, in substance, a complaint by the appellee to the clerk, because he had failed to deliver them in September, and an admission by him that this was true, and the expression of his belief that he would lose his position as the result of it. He also then said nothing to the effect that he had, in fact, delivered them to the drayman. It was competent to prove this conversation, and the failure of the clerk to then claim that there had been a delivery, by both the clerk upon cross-examination and by the appellee, not as an admission against the appellant, as it did not relate to any act or duty the agent was then performing for his principal, and was not a part of the *res gestæ*, but the clerk had already testified, at the instance of the appellant, that he did in fact deliver the goods to the drayman in September, and this evidence was competent by way of contradiction.

Judgment affirmed.